```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 09-14255-CIV-GRAHAM
                                    MAGISTRATE JUDGE P.A. WHITE
RAYMOND THOMAS,                 :

     Plaintiff,                 :

v.                              :        REPORT OF
                                         MAGISTRATE JUDGE
SGT. K. PIENIOZEK, et al.,      :

     Defendant.                 :
_____
```

I. Introduction

Plaintiff Raymond Thomas, who is confined at Charlotte Correctional Institution, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for damages and other relief concerning events that occurred when he was confined at Okeechobee C.I. ("OCI") in 2008. After an Order affirming the Preliminary Report, the case has remained pending on Thomas's claim that on December 23, 2008, OCI Sergeant Pieniozek, Officer Jeffrey Vidal and Officer Dennis Durrance, used excessive force during a search of his cell.

This Cause is before the Court upon Defendant Durrance's and Vidal's motion for summary judgment (DE# 69), as to which plaintiff Thomas was advised of his right to respond (DE# 81).[1] In support

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that

of their motion, the Defendants have submitted a Statement of Uncontested Facts (DE# 70), along with multiple exhibits: <u>Exhibit A</u>, Affidavit of Jeffrey Vidal (DE# 72, pp. 4-5); <u>Exhibit B</u>, Affidavit of Dustin Durrance (DE# 72, pp. 6-7); <u>Exhibit C</u>, Affidavit of Timothy Galas (DE# 72, pp. 8-10); <u>Exhibit D</u>, Affidavit of Paul Gray (DE# 72, pp. 11-13); <u>Exhibit E</u>, Affidavit of Douglas Bain (DE# 72, pp. 14-15); <u>Exhibit F</u>, Affidavit of Tim Sheffield (DE# 72, pp. 16-18); and <u>Exhibit G</u>, Deposition of Plaintiff Thomas Thomas and attached documentation of disciplinary infractions and grievances (DE# 72, pp. 19-139, DE# 74).

In response, Plaintiff Thomas submitted an answer to the

---

summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir.1987), an Order of Instruction (DE# 81) was entered, informing Plaintiff, as a *pro se* litigant, of his right to respond to the defendant's motion for summary judgment. The Order specifically instructed Plaintiff regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion.

Defendants' uncontested facts (DE# 87) and an answer to the motion for summary judgment (DE# 88). Defendants Vidal and Durrance have filed a Reply in Support of Motion for Summary Judgment. (DE# 91).

## II. Discussion

Defendant Pieniozek-Lack of Service of Process

An unexecuted Process Receipt and Return was filed for defendant Pieniozek with the explanation: "No longer employed here." (DE# 37). The Plaintiff had been previously advised that failure to provide an accurate address for a Defendant would result in dismissal of the complaint as to that Defendant. (DE# 23). Thereafter, on November 1, 2010 a new summons was issued listing a new address for Defendant Pieniozek.[2] (DE# 86). The Plaintiff sought this summons without motion to the court. No return of service has yet been filed on this summons. It is now a year and a half since the complaint was received and docketed by the Clerk of Court [DE# 1], and it appears that, as to the unserved defendant, Pieniozek, the complaint should be dismissed pursuant to Fed.R.Civ.P. 4(m), which provides for dismissal of a complaint which could not be served within 120 days of its filing. The Plaintiff was previously advised of this consequence of failure to timely provide an accurate address for Defendant Piezionek.

Law Pertaining to Eighth Amendment Excessive Use of Force Claims

The Supreme Court has held that application of the deliberate indifference standard is inappropriate in the prison context when authorities use force to put down a disturbance by inmates. Hudson v. McMillian, 503 U.S. 1 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, supra, 475 U.S. at

---

[2]This address matches the address provided for Pieniozek in Defendants' witness list.

3

320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.)).

Whether the prison disturbance is a riot or a lesser disruption, the corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates; but the Courts have acknowledged that "both situations may require prison officials to act quickly and decisively...[and] should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Hudson v. McMillian, supra, (quoting Whitley, supra, at 321-22); Brown v. Smith, 813 F.2d 1187 (11 Cir. 1987).

The test to determine whether a claim of excessive force rises to a constitutional level of cruel and unusual punishment involves both subjective and objective components.

The subjective component relates to whether a defendant possessed a wanton state of mind while applying force, and requires the claimant to show that the prison officers' actions were malicious and sadistic, and for the purpose of causing harm, or unnecessary and wanton pain and suffering upon the prisoner. Hudson v. McMillian, supra, 503 U.S. at 6-7; Rhodes v. Chapman, 452 U.S. 337 (1981); Gregg v. Georgia, 428 U.S. 153 (1976); Stanley v. Hejirika, 134 F.3d 629, 634 (4 Cir. 1998); Branham v. Meachum, 77 F.3d 626, 630 (2 Cir. 1996); Bennett v. Parker, supra, 898 F.2d at 1532-33.

Thus, under the Eighth Amendment, force may be employed in a custodial setting as long as it is not done "maliciously and sadistically to cause harm," but applied in a good faith effort to maintain or restore discipline. Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986) (quotations omitted). The factors relevant to the determination of whether the force was used maliciously and sadistically with the purpose of causing harm include: 1) the extent of the injury inflicted; 2) the need for force; 3) the relationship between the

4

need for force and the amount of force used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell v. Sikes, 169 F.3d 1353, 1375 (11 Cir. 1999); Redd v. Conway, 160 Fed.Appx. 858, 860 (11 Cir. 2005), citing Carr v. Tatangelo, 338 F.3d 1259, 1271 (11 Cir. 2003); Bennett v. Parker, 898 F.2d 1530, 1532-33 (11 Cir. 1990); Stanley v. Hejirika, supra, 134 F.3d at 634; Branham v. Meachum, supra, 77 F.3d at 630; Lunsford v. Bennet, 17 F.3d 1574, 1581 (7 Cir. 1994).

Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace, in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used. See e.g. Williams v. Benjamin, 77 F.3d 756, 762-63 (4 Cir. 1996); Soto v. Dickey, 744 F.2d 1260, 1270-71 (7 Cir. 1984); Spain v. Procunier, 600 F.2d 189, 195 (9 Cir. 1979); Williams v. Scott, No. 96-2184, 1997 WL 312273, at *1 (7 Cir., June 5, 1997); Barr v. Williamsburg Co. Sheriff's Dept., No. C/A2:02-0167-22AJ, 2002 WL 32333152, at *4-5 (D.S.C., Dec. 27, 2002); but see Vinyard v. Wilson, 311 F.3d 1340, 1348-49, n.13 (11 Cir. 2002).[3]

In short, for an inmate to prevail on a claim of excessive force he must satisfy not only the subjective component that the

---

[3] In Vinyard, supra, the Eleventh Circuit, reviewing its own decisions where force and injury were held to be de minimis and not excessive, and affirming summary judgment for defendant police officer Stanfield as to uses of force against Vinyard at an arrest scene, and after arrival at the police station, and as to any resulting injuries at those two points; but reversing, in part, the district court's judgment which had granted summary judgment to officer Stanfield with regard to force used against Vinyard during the ride to jail [when Stanfield stopped the police vehicle en route, grabbed Vinyard causing bruising of her harm and breast, and sprayed her with mace in order to try to stop the intoxicated arrestee Vinyard from screaming obscenities and insults], finding that although there existed "a strong argument" that the act of grabbing and bruising Vinyard constituted de minimis force and injury, "[w]hat distinguishes Stanfield's force during the jail ride from the de minimis force and injury cases is the use of pepper spray".

5

corrections officials acted with a sufficiently culpable state of mind, but also the objective component that he suffered some injury which was sufficiently serious in relation to the need for the application of force to establish constitutionally excessive force.

It is well settled that the "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). Although an unjustified, brutal beating of an inmate by a guard is sufficient to state a claim under §1983, Haines v. Kerner, 404 U.S. 519 (1983); Perry v. Thompson, 786 F.2d 1093 (11 Cir. 1986); Aulds v. Foster, 484 F.2d 945 (5 Cir. 1973), not every push and shove, striking, or other use of force against a prisoner, even if it may later seem unnecessary in the peace of a judge's chambers, gives rise to an action in federal court for a deprivation of civil rights. Hudson v. McMillian, 503 U.S. 1, 9 (1992); Graham v. Connor, 490 U.S. 386 (1989); Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.), cert. denied, 414 U.S. 1033 (1973); Bennett v. Parker, 898 F.2d l530, 1533 (ll Cir. l990); Spicer v. Collins, 9 F.Supp. 2d 673, 686 (E.D.Tex. 1998).

On April 26, 1996, the Prison Litigation Reform Act [PLRA] was enacted. The PLRA significantly altered a prisoner's right to bring civil actions *in forma pauperis*, and in pertinent part placed new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement.

Section 1997e(e) of the PLRA provides as follows.

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

With the enactment of the Prison Litigation Reform Act [PLRA] the requirements relating to injury for various kinds of inmate civil rights claims, including claims relating to use of force against inmates by corrections officials, have changed.

The Eleventh Circuit has interpreted this provision of the PLRA to mean that if due to the defendant's actions, a prisoner has not suffered some physical injury which is sufficient to satisfy the statutory provision in question, and the prisoner therefore cannot show anything more than mental or emotional suffering, the prisoner is foreclosed from obtaining compensatory or punitive damages even if there has been some violation of his constitutional rights.[4] The Eleventh Circuit, however, did not hold that a viable claim for nominal damages would necessarily be foreclosed under §1997e(e), even if entitlement to other damages were barred under the statute.[5]

In the absence of any definition of "physical injury" in the PLRA, it has been left to the Courts to interpret the nature of the injury required. See Watts v. Gaston, No. 97-0114-CB-M, 1999 U.S.

---

[4] When a prisoner files a complaint without a showing of more than *de minimis* physical injury, Section 1997e(e) operates to bar recovery of compensatory and punitive damages for mental and emotional injury suffered while the plaintiff was incarcerated; and in the Eleventh Circuit the §1997e(e) bar precluding recovery compensatory and punitive damages has been held to apply to constitutional claims other than those involving physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11 Cir. 1999), vacated in part and reinstated in part, Harris v. Garner, 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc). The Court in Harris, while holding that §1997e(e) is a limitation on the damages which are recoverable, found that it does not preclude a prisoner's right to seek declaratory and injunctive relief. Harris, supra, 190 F.3d at 1287-88.

[5] The Court in Harris, expressed no view on whether §1997e(e) would bar nominal damages which normally are available for the violation of certain "absolute" constitutional rights, without a showing of actual injury, Harris, 190 F.3d at 1288 n.9 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)), and thus Harris does not stand for the proposition that all actions for redress of alleged abridgement of constitutional rights are barred if there is no physical injury. The Court left open the question whether, upon a prisoner's showing that he or she had suffered the violation of some absolute constitutional right, the prisoner/plaintiff might be entitled to nominal damages (in addition to declaratory and/or injunctive relief) for redress of the constitutional tort even in the absence of physical injury. Several other circuits have reached the question regarding availability of nominal damages, and have held that [apart from any unavailability of punitive and/or compensatory damages resulting from the statutory language of §1997e(e)] prisoner plaintiffs may sue on constitutional claims and if they prevail may at least recover nominal damages. See Thompson v. Carter, 284 F.3d 411, 418 (2 Cir. 2002) (declaratory and injunctive relief, and nominal damages not barred); Searles v. Van Bebber, 251 F.3d 869, 878-80 (10 Cir. 2001) (compensatory damages barred, but nominal damages and punitive damages are not); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3 Cir. 2000) (compensatory damages are barred, but nominal and punitive damages are recoverable); Rowe v. Shake, 196 F.3d 778, 781-82 (7 Cir. 1999) (declaratory and injunctive relief, and nominal damages not barred).

7

Dist. LEXIS 6593 (S.D.ALA. April 1, 1999).

In conducting inquiries relating to Eighth Amendment use of force claims the Courts have interpreted the language of §1997e(e) to require actual physical injury that is something more than *de minimis* injury in order to sustain a claim for relief.[6] Gomez v. Chandler, 163 F.2d 921, 924 (5 Cir. 1999) ("to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury"); Spicer v. Collins, 9 F.Supp. 2d 673, 686-87 (E.D.Tex. 1998) (in case where the plaintiff failed to allege any physical injury when defendant officer grabbed him by arm, and alleged pain in neck, arms, and hands from handcuffing, the Court held that "In addition to establishing that force was applied maliciously and sadistically to cause harm, a plaintiff must show that he suffered some injury in order to prevail on an Eighth Amendment excessive force claim," and ruled that the force used was not the sort of force "repugnant to the conscience of mankind"); Siglar v. Hightower, 112 F.3d 191, 193 (5 Cir. 1997) (inmate's alleged injury at hand of prison guards was de minimis, and thus he did not raise a valid Eighth Amendment claim for excessive use of force, nor did he show a prerequisite "physical injury" under the PLRA to support a claim for emotional or mental suffering). See: Luong v. Hatt, 979 F.Supp. 481, 485-6 (N.D. Texas 1997) (in case involving use of force against inmate by other inmates, the District Court interpreted §1997e(e) to require a specific physical injury, i.e., an injury which is an "observable or diagnosable medical condition requiring treatment by a medical care professional," in order to assert a claim for which relief

---

[6] Prior to the PLRA the absence of injuries, or evidence of only minor injuries were held by the Courts to be suggestive of *de minimis* uses of force not rising to the level of cruel and unusual punishment. See: Norman v. Taylor, 25 F.3d 1259, 1262-64 (4 Cir. 1994)(swinging keys at inmate's face which struck his thumb did not amount to cruel and unusual punishment); White v. Holmes, 21 F.3d 277, 280-81 (8 Cir. 1994)(keys swung at inmate which slashed his ear did not rise to Eighth Amendment violation); DeArmas v. Jaycox, No. 92 Civ. 6139(LMM), 1993 WL 37501, *4 (S.D.N.Y. Feb. 8, 1993)(punching inmate in arm and kicking him in leg constituted de minimus force), aff'd, 14 F.3d 591 (2 Cir. 1993); Gabai v. Jacoby, 800 F.Supp. 1149, 1154-55 (S.D.N.Y. 1992) (shoving chair at inmate causing bruise not actionable); Neil v. Miller, 778 F.Supp. 378, 384 (W.D. Mich 1991) (backhand blow to groin not actionable).

could be granted for a claim of this kind).[7]

Gomez, Spicer, Siglar, and Luong notwithstanding, it is noted that, post-PLRA, in 2002, the Supreme Court, in Hudson v. McMillian, supra, held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury. Hudson, 503 U.S. at 5-12. It is further noted that this Circuit has held, in the Eighth Amendment context, both before and after enactment of the PLRA, that use of unnecessary or gratuitous force against a prisoner is cognizable in a prisoner civil rights suit for damages. See Bruce v. Wade, 537 F.2d 850, 853 (5 Cir. 1976) (a violation of §1983 is clearly stated by the unjustified beating of an inmate at the hands of prison officials); Skrtich v. Thornton, 280 F.3d 1295, 1303 (11 Cir. 2002)(stating: "By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued, or, as in this case, is incapacitated")(citing cases).[8]

---

[7] The Court in Luong defined "*de minimis*" injuries to include injuries such as "scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek medical professional care," which may last "even up to two or three weeks," and which can be treated by "home remedy care," with "over-the-counter drugs, heating pads, rest, etc., and the Court held that such injuries are excluded from constitutional recognition under §1997e(e). Luong, supra, 979 F.Supp. at 485-6.

[8] The Skrtich Court cited Harris v. Chapman, 97 F.3d 499, 505-06 (11 Cir. 1996) (where prisoner, who had resisted haircut and threatened to kill the barber, was forcibly removed from his cell and beaten and restrained by a group of officers, a sixth officer's actions of snapping the prisoner's head back with a towel, slapping him in the face, and uttering racial epithets and other taunts were a constitutional deprivation, meriting award of damages by jury); Davis v. Locke, 936 F.2d 1208, 1212-13 (11 Cir. 1991) (where prisoner who attempted escape and was recaptured and placed in a dog box on a truck with his hands shackled behind his back, the action of pulling him by the ankles from the box, causing him to land on his head, causing him to suffer psychological injuries, the court held that the ongoing violation of escape had been terminated, and a jury could reasonably conclude that he posed no continuing risk of threat to the guards; Williams v. Cash - C.O.I., 836 F.2d 1318, 1320 (11 Cir. 1988) (where prisoner refused to comply with a prison guard's order to return to his cell, and prisoner alleged he was subdued and his arm was broken, summary judgment for the guard was no appropriate where the prisoner alleged that the guard purposefully broke his arm after he had ceased to resist); and Perry v. Thompson, 786 F.2d 1093, 1095 (11 Cir. 1986) (Appellate Court, finding a "square, head-on dispute of material facts," reversed grant of summary judgment in prisoner haircut case, where prisoner whose hands were cuffed in front of him, alleged he was thrown to the floor

Parties Versions of Events

In this case, the December 23, 2008 event which gave rise to the lawsuit occurred at OCI on in Cell C1113 located in Wing 1 of Dormitory C. On that day, corrections officers were conducting random cell searches in that area. Defendant Vidal, requested that Plaintiff exit his cell for a search. This much is undisputed.

Plaintiff's initial account of the events is found in his complaint. (DE# 1). He initially alleged that on December 23, 2008 he was in his cell reading when a random cell search was announced. As he left his cell Plaintiff was carrying a book. Officer Vidal took the book from his hand. Plaintiff tried to grab the book back, but it fell to the floor. Plaintiff alleges that, as he bent down to get the book, Vidal grabbed him in a headlock and started choking him. According to Plaintiff, Officer Durrance then grabbed his arms and told Vidal to release him. At this point, Plaintiff alleges that Vidal punched him in the face several times while Durrance "rammed his face into the wall" as he took him down and placed hand cuffs on him. After Plaintiff was on the ground, Officer Piezionek came in and started kicking and spitting on him. Piezionek then sprayed Plaintiff with chemical agent. Plaintiff alleges that the beating continued as he was taken to confinement where he was promptly put in a shower. He was taken to medical and transported by ambulance to a hospital.

Alternatively, the Defendants have filed several affidavits that contest the facts as alleged by Plaintiff. These affidavits provide a different version of the events that occurred on December 23, 2008.

Vidal's affidavit alleges that Plaintiff failed to comply with an initial order to exit his cell. Upon the second order, Plaintiff exited the cell and struck Vidal in the mouth.  Vidal then grabbed

---

and beaten, the defendant officers' evidence was that the prisoner was shaved without incident and that medical records showed no complaint of injury on the day of the alleged beating).

Plaintiff and took him to the floor at which point Plaintiff struck his head on the floor. Plaintiff continued to fight and got on top of Vidal. While atop Vidal, Plaintiff was punching him in the ribs. Durrance then entered the cell and forced Plaintiff off Vidal. Despite orders to stop fighting, Plaintiff continued fighting with Durrance. Durrance then forced Plaintiff to the floor. Pieniozek arrived and also ordered Plaintiff to stop fighting. Despite the orders to cease fighting, Plaintiff continued fighting. Pieniozek applied chemical agent to the head and chest area of the Plaintiff. Plaintiff continued to struggle until restraints were applied. Vidal suffered a cut on his mouth and bruised ribs.

Durrance's affidavit corroborates Vidal's statement.

Officer Timothy Galas was searching a different cell with Officer Douglas Bain when he was alerted him to an incident taking place in Plaintiff's cell. He responded to the area and saw the Plaintiff on top of Vidal. He saw Durrance and Pieniozek arrive at the scene. Galas grabbed the Plaintiff's leg because he was kicking. Although overcome by the chemical agent, Galas continued to hold Plaintiff's leg until restraints were applied. Galas alleges that all force ceased once restraints were applied. Galas and Officer Paul Gray escorted the Plaintiff to B Dorm and placed him in the shower.

Officer Paul Gray received a call for assistance. When he arrived at the scene he saw Galas, Pieniozek, Bain and Vidal struggling with the Plaintiff. Vidal was bleeding from the mouth. The Plaintiff was hitting Durrance and Galas. Gray fell and injured his knee as he attempted to assist in restraining the Plaintiff. Despite the fall, he was able to help in restraining the Plaintiff. Gray alleges that the Plaintiff was aggressive and fighting and had refused all orders to stop fighting.

Officer Douglas Bain was present and assisted Vidal in getting out from under the Plaintiff. Vidal was bleeding from the mouth and had a swollen lip. Bain put the handcuffs on the Plaintiff.

11

Colonel Tim Sheffield was employed at OCI on the date of the incident. His affidavit addresses the procedures for the use of force to defend oneself or other corrections personnel. He also addressed the use of force to overcome an inmate's physical resistance to a lawful command. He states that during the time that the incident occurred other inmates were walking around freely in the dorm wing. He states that this is a dangerous situation.

The Plaintiff has filed a statement of uncontested facts. (DE# 87). Although titled a statement of uncontested facts this document actually is a rebuttal to the Defendants' motion and affidavits. The undersigned discerns certain facts which could truly be described as uncontested: (1) The date of the incident and the fact that a random cell search was in progress; (2) the Plaintiff and Vidal became involved in a physical confrontation; (3) Vidal grabbed Plaintiff and Plaintiff struggled with Vidal; (4) Durrance became involved in the struggle; and (4) at some point in the altercation Plaintiff was taken down and struck his head on the floor. The remainder of this statement is argument and makes reference to his deposition testimony. This document is not signed under penalty of perjury.

The Plaintiff has also filed a response to the affidavits that includes medical records, rules on force, the amended complaint, his **sworn deposition**[9] and documentation regarding his attempts to exhaust his administrative remedies. (DE# 88). In this document he, for the first time, alleges that he was in and out of consciousness during the incident and that he "can't remember a lot that went on on 12/23/08". The Plaintiff also provides legal argument that the motion for summary judgment should not be granted because there are genuine disputed issues of material fact. He has also filed a reply to the motion for summary judgment. (DE# 92). This statement is not signed under penalty of perjury.

---

[9]This sworn deposition meets the requirement of providing evidentiary material beyond that provided in his initial pleadings as required by Fed.R.Civ.P. 56(e).

The medical records submitted by Plaintiff indicate that he was treated for injuries sustained on December 23, 2008. A form titled Health Information Summary for Emergency Transfer to Outside Hospital was prepared by a health care provider on December 23, 2008 at 8:50 p.m. This document reflects that the Plaintiff was in a physical altercation at 7:40 p.m. The Plaintiff complained of dizziness and unsteady gait. The form notes that the Plaintiff had a laceration under his left eye, his left eye was swollen shut and he had a two small bumps on his head. The Plaintiff also had a small amount of blood on his left ear and a small abrasion on a finger. The form notes that the Plaintiff was transferred to Raulerson Hospital at 8:50 p.m.

The medical reports from Raulerson Hospital show that the Plaintiff was seen on December 23, 2008. The Plaintiff described his condition as injuries to his head, face, neck and groin. He claimed he was assaulted with fists and kicked. A CT scan was performed on the Plaintiff's cervical spine and revealed no fracture. A CT scan was also performed on the Plaintiff's facial bones. This scan revealed a depressed fracture of the orbital floor. A CT scan was also performed on the Plaintiff's brain. This scan reflected some soft tissue swelling but no intracranial injury. The discharge papers indicate a diagnosis of left orbital and sinus fracture. The Plaintiff was prescribed antibiotecs as well as medication for pain. The medical reports from Larkin Hospital show that the Plaintiff was seen on December 25, 2008 and also reflect that he sustained an orbital fracture.

Undisputed Facts

There exist a number of uncontested facts. The parties agree to the date of the incident. The parties agree that Vidal was the first officer to become engaged in a physical confrontation with the Plaintiff and that Durrance became involved shortly thereafter. The parties agree that the Plaintiff was offering some level of resistance and that this resistance continued at least until the Plaintiff was restrained. Both parties agree that Plaintiff at some point struck his head on the floor and was sprayed with a chemical

agent. The parties also agree that after the incident the Plaintiff was promptly taken to a shower and then seen by a medical care provider. The medical records are undisputed and show that the Plaintiff suffered a fractured orbital bone.

Disputed Material Facts

There remain a number of disputed material facts. The parties disagree on how the incident began; about the amount of force used by the Plaintiff; and about the amount of force used by the Defendants against the Plaintiff.

The Defendants contend that the incident was begun when Plaintiff refused an order to exit his cell and then struck Officer Vidal in the mouth. The Plaintiff contends that the incident began when Vidal grabbed a book out of his hand and when Plaintiff tried to retrieve the book Vidal grabbed him in a headlock and began choking him.

This disputed issue is material in that it provides context to the entire incident. If the Plaintiff began the incident by punching a corrections officer then the level of force legitimately utilized to restore order might be greater than if the Plaintiff merely was attempting to retrieve his book. Although both actions by Plaintiff show a disregard for orders from a corrections officer, the magnitude of the Plaintiff's disregard is distinguishable depending on the nature of his actions. This material issue cannot be decided without an evaluation of the credibility of both the Plaintiff and the officers who witnessed the incident. As of now this question of fact remains disputed.

The parties disagree on the extent and nature of the force used by each party. The Defendants, through affidavits, claim that the Plaintiff was kicking and punching throughout the altercation. They allege that the Plaintiff refused all orders to stop fighting and continued fighting until restraints were applied. They allege that the force used was commensurate with the level of resistance being offered by the Plaintiff. No Defendant acknowledges punching

or kicking the Plaintiff. The Defendants further allege that the chemical agent was used before restraints were applied. On the other hand, the Plaintiff acknowledges that he did struggle, but describes his struggles as an attempt to breath and to avoid the beating he claims was being inflicted. He claims that he was repeatedly punched in the face and kicked in the groin. He also claims that after he was handcuffed he was sprayed with a chemical agent and that the beating continued despite the restraints.

This disputed issue is material in that it goes to the amount of force used in relation to the resistance offered by the Plaintiff. The amount of force used and the reason for that force is a critical issue in an excessive use of force claim. See Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986) (quotations omitted). The question is whether the force was used in a good faith attempt to restore or maintain order, or maliciously to cause harm. Id. In addressing this question the undersigned must assess the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury, the threat that was reasonably perceived by the officer, and extent to which the officers tempered the severity of the force. Whitley 475 U.S. at 321.

If, as he claims, the Plaintiff he offered little resistance and was merely trying to breathe or avoid an unwarranted beating, the level of force he claims was used against him might be excessive, in that it went beyond the mere need to restore order or maintain discipline. If however, he was violently kicking and punching the officers, then even the level of force he claims might not have been excessive. On the other hand, if the Defendants are to be believed the Plaintiff was violently resisting all attempts to restrain him. The force used, as reflected in the affidavits, was limited to attempting to restrain the Plaintiff and all force ceased once he was adequately restrained. Thus if the Defendants are to be believed, there existed a need to restore order and the level of force used was commensurate with that need. The factual

disputes identified above go directly to the factors, as identified in Whitley, which are critical to a determination of whether the force used was excessive.

Based on the facts as presented at this summary judgment stage, any attempt to resolve the issues and facts in dispute pertaining to the use of force during the encounter between the Plaintiff and the Defendants would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., supra, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." Anderson, supra, 477 U.S. at 255 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Thus, in the instant case if the plaintiff is to be believed and all inferences are to be drawn in his favor, he has presented sufficient evidence to overcome the grant of the Defendant's motion for summary judgment.

The Defendant's have also sought summary judgment on the issue of qualified immunity. In determining whether a corrections officer is entitled to qualified immunity it is necessary to consider whether the officers violated a clearly established constitutional right. See Pearson v. Callahan, 555 U.S. 223 (2009). The question of whether the Defendants employed excessive force is intertwined with the question of whether they violated the Plaintiff's constitutional right to be free from cruel and unusual punishment. As discussed above, the facts necessary to the determination of this issue are in dispute. Thus due to the nature of the factual dispute, summary judgment on this issue is not appropriate.

### III. Conclusion

Due to the existence of the identified genuine issues of material fact, summary disposition of the §1983 excessive force

claim against Defendant is not appropriate. <u>Celotex Corp. v. Catrett</u>, <u>supra</u>.

It is therefore recommended that:

(1) Defendant Piezionek be dismissed for lack of service; and
(2) Defendant Durrance's and Vidal's motion for summary judgment be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: January 31st, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Raymond Thomas, <u>Pro Se</u>
     DC No. 126007
     Charlotte Correctional Institution
     33123 Oil Well Road
     Punta Gorda, FL 33955

     Monica Galindo Stinson, AAG
     Office of the Attorney General
     110 S.E. 6th Street, 10th Floor
     Fort Lauderdale, FL 33301